IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTEL ZUCHOWSKI, as personal
representative of the ESTATE OF MEGAN
ZUCHOWSKI

　　　　Plaintiff,

v.

ALPENA PUBLIC SCHOOLS,
SARA ZIMMERMAN, in her individual
and official capacity, and
KEITH AND ROSEMARY KLIMCZAK,

　　　　Defendants.

Case No.

Hon.

_____

Nicholas Roumel (P37056)
**NACHT & ROUMEL, P.C.**
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com
_____

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

　　　　Plaintiff, CHRISTEL ZUCHOWSKI, in her capacity as next friend/putative personal representative of the estate of her daughter, MEGAN ZUCHOWSKI, makes her complaint as follows:

**Preliminary Statement**

　　　　1.　　This is a civil rights action stemming from the suicide of the decedent, Megan Zuchowski, a 12-year-old girl, daughter of Christel and Parry, and sister to Hailey and Emily. Megan hung herself on a crude, makeshift swing in the backyard of her home on October 17, 2014.

1

## Jurisdiction and Venue

2. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 and § 1343(a)(4) as the claims asserted allege violations of federal constitutional law, under 42 U.S.C. § 1983, and pendent jurisdiction over the state of Michigan common law claims pursuant to 28 U.S.C. § 1367.

3. Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(D) because the events took place within Alpena County, Michigan, which is located within the jurisdiction of the United States District Court for the Eastern District of Michigan.

## Parties

4. Decedent Megan Zuchowski ("Megan") was born on August 30, 2002, the oldest child of Christel and Parry Zuchowski.

5. Megan was followed by sisters Emily and Hailey and lived with her family in Alpena, Michigan in a rented home owned by defendants Keith and Rosemary Klimczak.

6. Plaintiff Christel Zuchowski is the mother, next friend, and putative personal representative of the estate of her daughter Megan Zuchowski.

7. Defendant Alpena Public Schools ("APS," "the district") is a Michigan public school district pursuant to the School Code of 1976, MCL 380.1 et seq., with principal offices at 12373 Gordon Road, Alpena, MI 49707.

8. Defendant Sara Zimmerman was, at all times relevant, a teacher and school counselor at Thunder Bay Junior High, in the APS.

## Statement of Facts

9. Megan was a 7th grader at Thunder Bay Junior High School in the fall, 2014.

10. She was viewed as an average student who did not get into serious trouble.

11. School personnel were aware of certain issues of concern during the fall of 2014.

12. About a week before Megan's suicide, Megan came to school in obvious distress, claiming she couldn't sleep due to a fight between her parents at home. School personnel gave her food and allowed her to nap in a school office between 2 and 2 ½ hours. At no time did school personnel notify the parents or contact Child Protective Services (CPS).

13. Two days before her suicide, on Wednesday, October 15, 2014, Megan put her head down in the school cafeteria and appeared very sad. She told a friend she wanted to kill herself. Her friend was so shaken by this incident, she ran to a school counselor, defendant Sara Zimmerman. She told Zimmerman what Megan had told her.

14. A short time later, the friend approached Zimmerman and told her Megan was "joking."

15. Megan also approached Zimmerman, and admitted she was sad; but she denied that she was suicidal.

16. Zimmerman told Megan that if she did feel suicidal, to come and talk to her.

17. Zimmerman did not attempt to contact Megan's parents, did not contact CPS, did not document the incident or tell anyone else at school about the encounter, and went about her day going to meetings. She did not go to work on Thursday or Friday, October 16 or 17, 2014.

18. The day before Megan's suicide, on Thursday, October 16, 2014, a different teacher noticed that Megan had come to school looking "rough." Megan told the teacher she had a fight with her best friend. The teacher did not attempt to contact Megan's parents, did not contact CPS, and did not tell anyone else at school about the encounter.

19. On the rainy evening of October 17, 2014, Megan was at home with her mother and sisters. She went into the backyard sometime in the evening, before dark, and was talking with a friend on her cell phone.

20. In the backyard, there was a two-by-four connected between a fence and a tree. Hanging from the two-by-four was a rope, looped into a U-shape. At the bottom of the rope, about three or four feet above the ground, was a piece of green rubberized material about a foot to a foot-and-a-half long wrapped around the rope, in an apparent attempt to make a swing.

21. The swing was obviously and inherently dangerous. Christel Zuchowski asked their landlords, defendants Keith and Rosemary Klimczak, numerous times to remove the hazard. The landlords never complied. Christel and Parry hesitated to take it down themselves because it was a rental and not their property.

22. On the evening of the 17th, Megan placed her neck on the rubberized tube at the bottom of the loop and began twisting around, tightening the rope and tube around her neck.

23. At the time, she was talking to a friend on her phone. According to the police report of Megan's death, the friend said "it sounded like something was lightly banging against the phone. He said it kept hitting the phone every few seconds making a tick, tick, tick sound. He then heard Megan wheezing and a few seconds later, it sounded like the phone dropped and hit the ground."

24. Megan's five-year-old sister witnessed this entire incident. She told police she saw Megan put the rope around her neck and begin spinning around. "She told her to stop, but Megan said no."

25. The friend who was speaking with Megan on the phone heard Megan's sister screaming and crying. The sound faded for about a minute to a minute and a half, and then it gained in intensity until the phone was hung up. After the phone went dead, the friend went to the football game.

26. Eventually Megan's mother and grandmother found Megan lying on the ground beneath the swing, unresponsive. Resuscitation efforts at the scene were unsuccessful.

27. An autopsy was ordered. Despite the above evidence, the medical examiner chose to determine that Megan's death was "accidental" due to the absence of a note declaring her intentions, and "her cognition level at age 12."

28. After Megan's death, her peers approached school personnel and her parents and indicated that Megan was being bullied. Her parents had no idea.

29. Alpena Schools superintendent Brent Holcomb told police that the Defendant Zimmerman did not follow up real well and that was concerning to him. He expressed the same concerns about her "lack of followup" after he read a statement prepared by Defendant Zimmerman attesting to her inaction. On information and belief, he suspended Zimmerman.

30. According to the Center for Disease Control, suicide is the second leading cause of death for ages 10-24, and from 12-18. More teenagers and young adults die from suicide than from cancer, heart disease, AIDS, birth defects, stroke, pneumonia, influenza, and chronic lung disease, combined.

31. Each day in our nation, there are an average of over 3,470 attempts by young people grades 9-12. If these percentages are additionally applied to grades 7 & 8, the numbers would be higher. [http://prp.jasonfoundation.com/facts/youth-suicide-statistics/]

32. Four out of five teens who attempt suicide have given clear warning signs. [Id.]

33. Victims of bullying are two to nine times more likely to commit suicide than non-victims.

34. In light of this national health crisis, suicide prevention education and training is available to schools, to recognize warning signs and to immediately take proactive steps and to notify parents and appropriate authorities. [E.g., http://www.edweek.org/ew/articles/2012/10/24/09lafleur.h32.html; http://www.nova.edu/suicideprevention/]

35. On information and belief, Alpena Public Schools has undertaken no such measures, and Defendant Zimmerman, an experienced counselor, was completely untrained and unprepared to deal with an obvious warning sign, as in this case, where a classmate was so concerned that she ran to tell Zimmerman that her friend was sad and wanted to commit suicide.

36. This warning sign was on top of the other incidents that week that came to the attention of Thunder Bay Junior High School officials, as described in paragraphs 12 and 18 above. While these officials may have been kind in the moment to Megan, they did nothing to document these situations, notify parents, notify authorities, compare notes, or otherwise act proactively to recognize and respond to a child in acute distress and on the verge of taking her own life.

## COUNT I
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
## 42. U.S.C. § 1983, 42 U.S.C § 1988
*(Against Defendant Zimmerman)*

37. Defendant Zimmerman is a "person" within the meaning of 42 U.S.C. § 1983.

38. At all relevant times, Defendant Zimmerman acted within the scope of her employment and under "color of state law" by virtue of her employment with Alpena Public Schools

39. Megan had a clearly established Constitutional right to life under the Fourteenth Amendments to the United States Constitution.

40. Defendant Zimmerman violated Megan's clearly established constitutional rights by consciously, intentionally, and recklessly disregarding a known risk of suicide.

41. Defendant Zimmerman's inaction amounted to deliberate indifference.

41. Defendant Zimmerman's deliberate indifference was the proximate cause of Megan's death and consequent damages to her and her estate, as set forth in more detail below.

## COUNT II
### 42. U.S.C. § 1983, 42 U.S.C § 1988
### *MONELL* PATTERN AND PRACTICE LIABILITY
### *(Against Defendant Alpena Public Schools)*

42. Defendant Alpena Public Schools is a "person" within the meaning of 42 U.S.C. § 1983.

43. At all relevant times, the actions and omissions of Defendant Zimmerman and the Agents of Defendant APS were undertaken under "color of state law."

44. Defendant APS, through its custom, practices, and policies, were completely untrained and unprepared to deal with proactive response to suicide warning signs, and to undertake education and training, to do everything possible to prevent child suicide despite it being the second leading cause of death for children of Megan's age in the nation.

45. This included, but is not limited to:

   a. Actual notice of clear personal distress by Megan in the week leading to her suicide.

   b. Defendants' failure to adequately train, and maintain policies, handbooks and practices regarding appropriate policies and procedures for addressing suicide prevention, including staff awareness, prevention and response.

   c. Defendants' failure to adequately train, and maintain policies, handbooks and practices concerning mandatory reporting requirements for Child Protective Services, reporting to parents, police, or other appropriate persons and agencies.

d. Defendants' failure to adequately train, and maintain policies, handbooks and practices for students and parents that facilitate recognizing and reporting of student emotional distress and suicide ideation, including coordination of reports and best practices for prevention.

e. Defendants' failure to adequately train, and maintain policies, handbooks and practices regarding communications with students and parents concerning prevention, reporting, investigation, and resolution of student emotional distress and suicide ideation.

f. Defendants' failure to adequately train, and maintain policies, handbooks and practices to assure the safety of the student population in light of the known risk of youth suicide.

46. Defendant Alpena Public Schools' pattern and practice of deliberate indifference, lack of training, supervision, record-keeping, notification, and other suicide prevention measures as set forth above, was the proximate cause of Megan's death and consequent damages to her and her estate, as set forth in more detail below.

47. Defendants are not immune from liability under this theory inasmuch as Defendants acted intentionally or grossly negligently, in a manner that was deliberately indifferent to the rights of Plaintiff, and as a result of custom or policy resulting in the deprivation of Plaintiff's rights.

## COUNT III
## NEGLIGENCE
*(Against Defendants Keith and Rosemary Klimczak)*

48. The "swing" on which Megan hung herself was installed and/or knowingly maintained by the Klimczaks, the owners and landlords of the Zuchowski's home at the time of Megan's suicide.

49. The swing was inherently unsafe due to its design and construction, and presented a known risk of child injury.

50. The swing was constructed without a permit, notice or approval by government building inspectors or officials, and on information and belief, contrary to applicable ordinance or code.

51. The Defendants Klimczaks had a duty to install and maintain a safely installed and designed swing.

52. They breached that duty by installing and/or maintaining an inherently unsafe and unapproved swing, jerry-rigged in the backyard to resemble a hangman's noose.

53. They were on clear notice that it was unsafe, unwanted, and should be removed, due to numerous requests from Christel Zuchowski.

54. The Defendants Klimczaks failed to heed these numerous requests and otherwise breached their clear duty to install and/or maintain only safe and approved play structures in the backyard of their home.

55. Their breach of duty proximately caused Megan's death and the damages set forth herein and below.

### Damages

56. As a proximate cause and/or consequence of Defendants' conduct and actions, actual and/or consequential damages were suffered including but not limited to the following:

   a. Megan's conscious, physical pain and suffering;

   b. Megan's loss of life, ability to earn and contribute to society;

    c.    Damages suffered by those she left behind, as entitled in her estate under law, including but not limited to funeral and burial expenses; emotional injuries; mental anguish; mortification and humiliation; denial of social pleasures, love, and companionship;

    d.    all other damages allowable by law.

57.    Defendants' actions were made with reckless disregard to Plaintiff's legal and civil rights and warrant imposition of the greatest possible combination of punitive, emotional distress and exemplary damages, as allowed by law.

## Jury Demand

Plaintiff demands a jury trial.

## Relief Requested

*W H E R E F O R E*, Plaintiff Christel Zuchowski, as personal representative of the Estate of Megan Zuchowski, demands judgment against Defendants as follows:

    A.    Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Michigan Wrongful Death Act, MCL 600.2922;

    B.    Punitive damages;

    C.    An award of interest, costs, and reasonable attorney fees; and

    D.    Such other and further relief as appears reasonable and just under the circumstances.

                                          Respectfully submitted,

                                          NACHT & ROUMEL, P.C.

                                          *s/Nicholas Roumel*

                                          Nicholas Roumel
October 12, 2017                          Attorneys for Plaintiff