UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTEL ZUCHOWSKI, as personal
representative of the ESTATE OF MZ,

        Plaintiff,         Case No. 17-cv-13345

v.         Honorable Thomas L. Ludington

ALPENA PUBLIC SCHOOLS, et al,

        Defendants.

_____/

# ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND DENYING MOTION TO DISMISS

On October 12, 2017, Plaintiff Christel Zuchowski filed a complaint which named Alpena Public Schools, Sara Zimmerman, Keith Klimczak, and Rosemary Klimczak as Defendants. ECF No. 1. Keith and Rosemary Klimczak answered on November 6, 2017. ECF No. 7. Sara Zimmerman answered on November 21, 2017. ECF No. 8. And Defendant Alpena Public Schools answered on November 27, 2017. ECF No. 9. On December 10, 2017, Zuchowski filed a motion for leave to file an amended complaint. ECF No. 11. The proposed amended complaint clarifies that "the basis of jurisdiction against the Klimczaks" is supplemental jurisdiction and corrects an error in the numbering of paragraphs. *Id.* at 3. Sara Zimmerman has indicated that she does not oppose the motion. ECF No. 13. The Klimczaks oppose the motion, arguing that supplemental jurisdiction does not exist because the claims Zuchowski advances against the other Defendants arise out of a different nucleus of fact compared to her claim against the Klimczaks. On December 20, 2017, Keith and Rosemary Klimczak filed a motion to dismiss the claim advanced against

them, relying upon the same jurisdictional arguments. For the following reasons, the motion for leave to file an amended complaint will be granted, and the motion to dismiss will be denied.

# I.

## A.

At the pleading stage, all well-pleaded allegations are assumed to be true. Christel Zuchowski is bringing suit as the personal representative of the estate of her daughter, MZ.[1] . This suit involves events that occurred in the fall of 2014. Compl. at 2, ECF No. 1. Plaintiff alleges that MZ died by asphyxiation on October 17, 2014, after wrapping part of a rope swing around her neck. *Id.* at 1. At the time of her death, MZ was a seventh grade student at Thunder Bay Junior High School. *Id.* at 2. MZ was an average student who exhibited several "issues of concern during the fall of 2014." *Id.* Zuchowski alleges that inaction by Sara Zimmerman and the Alpena Public Schools in response to those issues proximately caused MZ's death. Zuchowski additionally argues that negligence by the family's landlords, Keith and Rosemary Klimzcak, proximately caused MZ's death.

Plaintiff alleges that, "[a]bout a week before [MZ]'s suicide, [MZ] came to school in obvious distress, claiming she couldn't sleep due to a fight between her parents at home." *Id.* at 3. "School personnel gave her food and allowed her to nap in a school office," but did not notify MZ's parents or Child Protective Services. *Id.* Two days before MZ's death, she "put her head down in the school cafeteria," "appeared very sad," and "told a friend she wanted to kill herself." *Id.* MZ's friend immediately told a school counselor, Defendant Sara Zimmerman, about the

---

[1] Federal Rule of Civil Procedure 5.2(a) directs that court filings which contain "the name of an individual known to be a minor" should be redacted and the minor's initials be used instead. However, Rule 5.2(h) explains that the protected party can waive the Rule 5.2(a) protections by filing their own information without redaction and not under seal. Plaintiff's filings use MZ's full name, and so Christel Zuchowski has waived the redaction requirements of Rule 5.2(a). For that reason, the parties' filings will not be stricken. The Court, however, will refer to the decedent minor by her initials.

incident. *Id.* Soon after, MZ's friend returned to Zimmerman and informed her that MZ "was 'joking.'" *Id.* MZ also personally approached Zimmerman and stated that, although she was sad, she was not suicidal. *Id.* Zimmerman told MZ that "if she did feel suicidal, to come and talk to her." *Id.* Zimmerman did not contact MZ's family or child protective services, and likewise did not document the incident or inform school administrators. *Id.* The next day (one day before MZ's death), "a different teacher noticed that [MZ] had come to school looking 'rough.'" *Id.* MZ told the teacher that she had a fight with her best friend. *Id.* The teacher did not take further action. *Id.*

**B.**

On the evening of October 17, 2014, MZ was home with her mother and sisters. Sometime before dark, MZ walked into the backyard and began "talking with a friend on her cell phone." *Id.* at 3. While on the phone, MZ walked up to a rope "looped into a U-shape" which was hanging from a tree "in an apparent attempt to make a swing." *Id.* at 4. A "piece of green rubberized material about a foot to a foot-and-a-half-long" was wrapped around the rope. MZ "placed her neck on the rubberized tube at the bottom of the loop and began twisting" the rope and tube around her neck. *Id.* As MZ tightened the rope, she continued talking to her friend on the phone. *Id.* "According to the police report of [MZ's] death, the friend said 'it sounded like something was lightly banging against the phone. He said it kept hitting the phone every few seconds. . . . He then heard [MZ] wheezing and a few seconds later, it sounded like the phone dropped and hit the ground." *Id.*

MZ's younger sister witnessed the incident. *Id.* She told police that "she saw [MZ] put the rope around her neck and begin spinning around." *Id.* MZ's sister begged her to stop, but MZ refused. *Id.* MZ's friend heard MZ's sister screaming and crying over the phone. Eventually, his phone died, and he "went to the football game." *Id.* MZ's mother and grandmother found MZ unresponsive on the ground beneath the swing. *Id.* Resuscitation efforts were unsuccessful. *Id.*

**C.**

After an autopsy, the medical examiner concluded that MZ's death was accidental because she did not leave a suicide note and because of "her cognition level at age 12." *Id.* at 5. After MZ's death, "her peers approached school personnel and her parents and indicated that [MZ] was being bullied." *Id.* MZ's parents had been unaware of the bullying. *Id.* The superintendent for the Alpena Public Schools, Brent Holcomb, expressed concern to police over Zimmerman's "lack of follow-up." *Id.* Zimmerman was eventually suspended.

**D.**

Count One of the complaint advances a claim of deliberate indifference to serious medical needs against Zimmerman. Count Two frames a *Monell* municipal liability claim against the Alpena Public Schools. Plaintiff faults the Alpena Schools for failing to "take proactive steps" like training its employees to recognize warning signs and notify parents. *Id.* at 5–6. Plaintiff also criticizes the teachers and administrators who noticed warnings signs the week before MZ's death: "While these officials may have been kind in the moment to [MZ], they did nothing to document these situations, notify parents, notify authorities, compare notes, or otherwise act proactively to recognize and respond to a child in acute distress and on the verge of taking her own life." *Id.* at 6.

Count Three of the complaint charges Keith and Rosemary Klimczak with negligence. Plaintiff alleges that the swing on which MZ hung herself was "installed and/or knowingly maintained by the Klimczak" and was "obviously and inherently dangerous." *Id.* at 4, 8. According to Plaintiff, the swing had been "constructed without a permit, notice, or approval by government building inspectors or officials" and was noncompliant with "applicable ordinance[s] or code." *Id.* at 9. "Christel Zuchowski asked their landlords, defendants Keith and Rosemary Klimczak,

numerous time to remove the hazard. The landlords never complied. Christel and Parry hesitated to take it down themselves because it was a rental and not their property." *Id.* at 4. Plaintiff alleges that, by refusing to "heed these numerous requests and otherwise breach[ing] their clear duty to install and/or maintain only safe and approved play structures," the Klimczaks proximately caused MZ's death.

### E.

The proposed first amended complaint is largely identical to the current complaint. *See* Prop. Am. Compl., ECF No. 11, Ex. A. The proposed amended complaint includes additional information clarifying the jurisdictional basis for Plaintiff's claims against the Klimczaks. *Id.* at 2. Otherwise, the factual and legal allegations in the proposed amended complaint mirror the original complaint.

### II.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment would be futile if the proposed amended complaint does not state a claim upon which relief can be based. A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading

in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

Rule 12(b)(1) provides the means by which a party may assert lack of subject-matter jurisdiction as a defense. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* However, a "factual attack challenges the factual existence of subject matter jurisdiction." *Id.* In that case, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). Regardless, "the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

### III.

### A.

The motion for leave to file an amended complaint and the motion to dismiss both raise the same issue: Should the Court exercise supplemental jurisdiction over Plaintiff's state law negligence claim against the Klimczaks?[2] If so, then the motion to amend will be granted and the motion to dismiss will be denied. If not, then the motion to dismiss the Klimczaks will be granted, and the motion to amend will be denied.

A federal court may exercise supplemental jurisdiction over a plaintiff's state law claims if they form part of the same controversy as the federal claim. *See* 28 U.S.C. § 1367(a). "A related claim is one arising from a common nucleus of facts." *Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 355 (6th Cir. 2003) (citations omitted). The Supreme Court has explained: "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Id.* at 726. "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* And, importantly, there are sometimes compelling nonjurisdictional reasons to decline to exercise supplemental jurisdiction. For example, "the likelihood of jury confusion in treating divergent legal theories of relief" may warrant a refusal to exercise supplemental jurisdiction. *Id.* at 727.

---

[2] There can be no dispute that the Court has original jurisdiction to adjudicate Plaintiff's constitutional claims against Defendant Alpena Public Schools and Defendant Zimmerman. And, likewise, the parties agree that there is no original jurisdiction over the state law claim against the Klimczaks.

28 U.S.C. § 1367(c) provides four bases under which a federal court may decline to exercise supplemental jurisdiction over a claim:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). *See also Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) ("[D]istrict courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

**B.**

The initial question is whether Plaintiff's claims against the Alpena School and its employees arise out of the same case or controversy as her claims against the Kilmzcaks. If Plaintiff's claims all arise from the same common nucleus of facts such that a plaintiff would be expected try them in the same proceeding, the Court has discretion to exercise supplemental jurisdiction.

The Klimzcaks argue that the two classes of claims which Plaintiff advances "are so variant in factual background and legal theory that a plaintiff would not be expected to try them together." Def. Resp. Mot. Am. at 4, ECF No. 15. The Kilmzcaks indicate that the legal theory which Plaintiff relies upon is different for each class of Defendants and thus involves different standards and relevant facts. The Klimzcaks further indicate that "Plaintiff's theories as to the cause of [MZ's] death vary depending on the claim and the defendant." *Id.* at 6. Plaintiff is alleging that the

deliberate indifference of the Alpena Schools and its employees was the foreseeable cause of MZ taking her life. Plaintiff's theory as to the Klimzcaks is that their negligence resulted in an unreasonably dangerous condition on the land and thus foreseeably resulted in MZ's death. The Kilmzcaks argue that the claim against them can proceed only if MZ's death was accidental. Plaintiff disputes that assertion, contending that "Count III against the Klimzcaks is a negligence count that does not require a finding of intentional self-harm, but Plaintiff believes may proceed regardless of cause of death." Pl. Reply. Br. Mot. Am. at 5, ECF No. 16.

Despite the obvious distinctions between the different legal claims, each arise from the same common nucleus of fact. The most prominent thread between the claims is, of course, the underlying injury: MZ's death. Plaintiff believes that inaction by both classes of Defendants proximately resulted in her death. The Klimzcaks contend that Plaintiff's theory of liability is inconsistent between the two classes of Defendants. Perhaps, but that is not necessarily the case. Plaintiff alleges that MZ committed suicide, and that action by the Alpena Schools would have prevented her death. Plaintiff also alleges the Klimzcaks were negligent in maintaining an inherently dangerous object on their property which caused MZ's death. One of the factual issues in the case is whether MZ's death was intentional or accidental. If MZ's death is found to have been accidental, then the claims against the Alpena Schools and its employee have no merit, but the claim against the Klimzcaks may proceed. If MZ's death is found to have been intentional, then claim against the Alpena Schools its employees may advance, but that does not necessarily mean that the claim against the Klimzcaks would be defeated. While intentional harm by the decedent would typically defeat a negligence claim, the present suit is complicated by the decedent's age. As suggested by the coroner's report, MZ's age and corresponding level of cognition may render her actions nonintentional as a matter of law. This issue is unbriefed (and a

valid claim on the merits is not a predicate to jurisdiction). Plaintiff may argue that the Klimzcak's negligence provided a foreseeably convenient means of self-harm and thus facilitated MZ's death. The Klimzcaks will undoubtedly raise affirmative defenses to that theory, but the operative question at this stage is only whether the claims arise out of a common nucleus of fact.

And even if the Plaintiff's proximate causation theories are mutually exclusive, there is a common issue of fact for the jury to resolve. If supplemental jurisdiction were declined, the Alpena School and its employee could argue that the proximate cause of MZ's death was the inherently dangerous swing on the property, not any deliberate indifference on their part. Likewise, the Klimzcaks could argue before the state court jury that MZ's death would have occurred regardless of whether the swing existed. Thus, if the claims were tried separately, each jury would arguably be presented with an incomplete representation of the potential factors leading to MZ's death. At the very least, a risk of inconsistent verdicts would be created. In other words, these claims are of the sort which a plaintiff would be expected to try together.

The Klimzcaks argue that several cases have found that supplemental jurisdiction did not exist in similar circumstances. For example, the Klimzcaks cite *Didzerekis v. Stewart*, 41 F. Supp. 2d 840, 850 (N.D. Ill. 1999). In *Didzerekis*, a woman was killed by her mentally disturbed husband. Her estate sued the husband and also sued the municipality and its officers for "responding to her 911 call differently than it might a non-domestic abuse call for help." *Id.* The district court found that it would be "improper" to exercise supplemental jurisdiction over the claims against the husband because those claims involved "a different set of facts, actions, and theory of law." *Id.*

The Kilmzcaks also rely upon *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895 (7th Cir. 1997),[3] and *Holton v. Conrad*, 24 F. Supp. 3d 624, 626 (E.D. Ky. 2014).[4]

None of the cases which the Kilmzcaks rely upon involved a common and disputed issue of fact, much less one as material as that identified here. Rather, *Doe v. Walton Verona Bd. of Educ.*, No. CIV.A. 2011-171 WOB, 2012 WL 4364078, at *1 (E.D. Ky. Sept. 24, 2012) involves the most analogous facts. In that case, "Plaintiffs' state law claims against defendant Vance Sullivan require[d] proof of the actual repeated harassment of Janie Doe, and plaintiffs' federal claims require[d] proof of the school officials' and the KHSAA's deliberate indifference towards that alleged harassment." *Id.* The district court concluded that the claims derived from a common nucleus of operative fact: "The state law claims against Vance Sullivan involve alleged facts relevant to the school officials' and the KHSAA's knowledge of and deliberate indifference to the alleged harassment." *Id.* And the district court further reasoned that "[i]f this Court were to decline supplemental jurisdiction over plaintiffs' state law claims against Vance Sullivan, plaintiffs would have to file a separate suit against Vance Sullivan in state court. Plaintiffs then would have to litigate the entirety of that suit in state court while simultaneously litigating this action in federal court over many of the same facts." *Id.* at *2. Thus, the exercise of supplemental jurisdiction was in the interest of "judicial economy, convenience, and fairness to the parties." *Id.*

The same is true here. There are common issues of fact between the two classes of claims. Resolution of those common issues will materially advance all claims. In fact, litigating the claims separately poses a risk of jury confusion (and inconsistent verdicts) because the Defendants'

---

[3] In *Hutinchson*, the Seventh Circuit held that there was no common nucleus of fact which connected civil rights claims against county officials for negligent placement and supervision of a foster child in a home and products liability claims against the manufacturer of farming equipment which resulted in the child's death.

[4] In *Holton*, the district court concluded that there was no common nucleus of fact connecting a 42 U.S.C. § 1983 claim against a constable for excessive force and claims against the county jailor for failing to responding to the plaintiff's request for records.

respective theories will likely involve different theories of causation. Thus, although the exercise of supplemental jurisdiction in some cases might result in a strong "likelihood of jury confusion," a refusal to exercise supplemental jurisdiction would actually create a greater risk of confusion here. *Gibbs*, 383 U.S. at 727. Thus, supplemental jurisdiction exists. And, under the same rationale, there are no compelling reasons to decline jurisdiction. Plaintiff's motion for leave to file an amended complaint will be denied, and the Klimzcaks' motion to dismiss will be denied.

## IV.

Accordingly, it is **ORDERED** that Plaintiff Zuchowski's motion for leave to file an amended complaint, ECF No. 11, is **GRANTED.**

It is further **ORDERED** that Defendant Keith and Rosemary Kilmzcak's motion to dismiss, ECF No. 14, is **DENIED.**

It is further **ORDERED** that Plaintiff Zuchowski is **DIRECTED** to file her amended complaint **on or before May 2, 2018.**

Dated: April 25, 2018      s/Thomas L. Ludington
                           THOMAS L. LUDINGTON
                           United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 25, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager